THOMAS v. CALLAWAY et al.

No. 12376.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 3, 1952.

Rehearing Denied Oct. 15, 1952.

Chandler & Trimble, Corpus Christi, for appellant.

Charles Whitener, Dallas, Howard G. Hartzog, Port Lavaca, Guittard & Henderson, Victoria, for appellee.

W. O. MURRAY, Chief Justice.

This suit was instituted December 19, 1950, by Dr. John R. Thomas against David P. Callaway and Robert Callaway (Callaway Bros.) in trespass to try title for possession of 656.77 acres of farm land in Calhoun County, Texas, and to recover damages for alleged waste committed and rents claimed to be owing. On January 18, 1951, Dr. Thomas secured possession of the land through sequestration proceedings instituted by him.

Callaway Bros. answered by general denial, a plea of not guilty and by way of cross-action sought damages, both actual and exemplary, alleged to have been suffered by them by reason of having been ousted from possession of the farm.

The trial was to a jury who answered some thirty-one special issues favorably to Callaway Bros., and judgment was entered thereon allowing Callaway Bros. a recovery of $15,000 actual damages and $5,000 exemplary damages less two items, which reduced the total judgment to $19,061.04.

From that judgment Dr. John R. Thomas has prosecuted this appeal.

Appellant's first two points are as follows:

"Point One. The pleading and the evidence of the appellees, whether true or false, are binding upon them and established a case requiring the court to grant appellant's motion for an instructed verdict.

"Point Two. The trial court, under the pleading and the evidence in this case, should have granted appellant's motion for judgment non obstante veredicto."

As we understand, appellant by these two points is presenting the contention that appellees have both plead and proved an oral lease contract of a farm for a period of two or more years, and that such a contract is void and unenforcible under the provisions of the Statute of Frauds, Article 3995, Vernon's Ann.Civ.Stats., and that such pleadings and evidence are binding upon appellees as though they had made a judicial confession, and that therefore they cannot recover in this cause.

It is true that appellees did plead that prior to November 1, 1949, they entered into an oral contract with appellant for the leasing of this farm in Calhoun County; that while the lease was for one year it was also agreed and understood that if either party to the contract was dissatisfied he would, before July 1, 1950, notify the other party of his dissatisfaction and the termination of the lease, and that if such notice was not given the lease would thereby be continued for another crop year; that appellant did not notify appellees of any dissatisfaction prior to July 1, 1950, but, on the contrary, led them to believe that they were satisfactory tenants, and that thereby the contract was renewed for another year.

Appellees also plead, in paragraph 7, Section IV of their third amended answer, as follows:

"By virtue of the foregoing, and by virtue of other negotiations and agreements in 1950 between Dr. Thomas and Callaway Bros., said parties entered into a valid and binding oral contract for the continuation of such tenancy and the renting of such land for the crop year of 1951, beginning on or about November 1, 1950, all upon the same terms and conditions and with the same rental provided, with respect to such crop year of 1950. Notwithstand-

ing such agreement for a lease upon said land, Dr. Thomas, acting through his attorney, on or about September 5, 1950, wrongfully and without jurisdiction, notified the Callaway Bros., that he desired possession of such land and thereafter on or about January 18, 1951, wrongfully dispossessed the defendants from said premises."

Rule 47, Texas Rules of Civil Procedure provides as follows:

"A pleading which sets forth a claim for relief, whether an original petition, counterclaim, cross-claim, or third-party claim, shall contain

"(a) a short statement of the cause of action sufficient to give fair notice of the claim involved, and

"(b) a demand for judgment for the relief to which the party deems himself entitled.

"Relief in the alternative or of several different types may be demanded."

Rule 45, Texas Rules of Civil Procedure provides, among other things, that all pleadings shall be so construed as to do substantial justice. See Pacific Employers Ins. Co. v. Gage, Tex.Civ.App., 199 S.W.2d 537.

Rule 90, Texas Rules of Civil Procedure, provides in part that, "Every defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by motion or exception in writing and brought to the attention of the Judge in the trial court before the instruction or charge to the jury or, in a non-jury case, before the rendition of judgment, shall be deemed to have been waived by the party seeking reversal on such account". Pena v. Snare, Tex.Civ.App., 196 S.W.2d 207; Connor v. Boyd, Tex.Civ.App., 176 S.W.2d 212.

When appellees' pleadings are given the liberal construction which must be given them under these rules and decisions they were sufficient to plead that a new oral contract was made by the parties prior to September 5, 1950, for the lease of appellant's farm for the crop year of 1951, or that the lease for 1950 was renewed.

There is nothing in the testimony of Pat Callaway which could be construed as ju-

dicial admission that he was not claiming under an oral contract made prior to September 5, 1951, for the leasing of the farm for the crop year 1951. The fact that he did not ask Dr. Thomas, in so many words, if he could lease the farm for another year, or that Dr. Thomas did not tell him, in so many words, that he could have the farm for another year, does not constitute an admission that no oral contract for the leasing of the farm for 1951 was made. We overrule appellant's first two points.

Appellant's third point reads as follows:

"In any event, the trial court should have submitted appellant's requested issues on his defenses to the appellee's suit in cross-action."

Appellant's special requested issue No. 5 reads as follows:

"Do you find from a preponderance of the evidence that the plowing and cultivating, if any, of plaintiff's land by defendants after the flax crop was gathered in 1950 and prior to September 5, 1950, was not the result of the own will or judgment of the defendants, or either of them, rather than the alleged acts and conduct, if any, of the plaintiff, John R. Thomas?"

█ This specially requested issue was properly refused by the trial court.

The trial court in special issues Nos. 15, 16 and 17, inquired of the jury whether Dr. Thomas by his acts and conduct led Callaway Bros. to believe that they had the place for 1951, and whether they relied thereon, and on such reliance made improvements in good faith. This was a sufficient submission of the matter to the jury, and to have given the issue requested by appellant would have been a submission of the same issues in a different form. Rule 279, Texas Rules of Civil Procedure, provides in part:

"Where the court has fairly submitted the controlling issues raised by such pleading and the evidence, the case shall not be reversed because of the failure to submit other and various phases or different shades of the same issue."

Appellant's fourth point reads:

"There is no evidence whatever supporting the verdict and judgment against the appellant in this case."

■ This point is overruled. There is some evidence in this record that Dr. Thomas by his acts and conduct made at least an implied agreement with Callaway Bros. to renew their lease agreement of the farm. Pat Callaway testified that in the spring of 1950 Dr. Thomas told him, "I like the way you are handling that up there. I had originally planned to have a contract drawn up, but I cannot see any reason for that." Then Pat Callaway further testified that after they had turned the flax land in 1950; after the flax had been harvested, Dr. Thomas and he rode around the farm and Pat said, "Doctor, I think that by next year I will have this patch of Johnson grass under control, and if I put flax on this land again next year, I believe that by the year after that we can have cotton and you will not have any flax to worry about." To this Dr. Thomas replied, "that will be just fine." Pat also talked to Dr. Thomas about changing the rows on part of the land for next year, to which Dr. Thomas said, "Anything you boys want to do is all right with me, I am happy the way you are handling things up there." Pat also testified that he had a discussion with Dr. Thomas about fertilizing, and Pat stated that the next year he intended to do some fertilizing, to which the Doctor replied, "That is fine, I would like you to try it." Pat further testified that about the middle of August, 1950, he told Dr. Thomas that his brother Robert and another boy who had been working on the place had gone into the Air Force, to which the Doctor said, "That will sure throw a lot of work on you." Pat replied, "It may be rough, but I can handle it all right." Shortly after that time Pat went to Corpus Christi to pay farm rent to Dr. Thomas and there they had a discussion. Dr. Thomas said, "Cotton sure does pay off a lot more than other crops." Pat said, "It sure does. This year I have not had much cotton, next year I think the restrictions will be off and we can plant a lot more cotton and both of us will make more money." Dr. Thomas replied, "That will be good. How do you plan to handle all of that land now that the boys are gone?" Pat replied, "I have got a good man, a negro, and as soon as he gets on the job and moves he will stay on the place, and until that time I am living on the place." Dr. Thomas replied, "That is O.K., I was kind of worried how you were going to handle it with the boys gone."

A witness, Robert Jackson, testified that in August, 1950, in a cafe in Tivoli, Dr. Thomas told him that Pat was going to work the land another year. In testifying to this conversation, Jackson said: "He told me that Pat was going to work it another year; he was going to get some help when Bob and Kenneth had to go into the air force." These statements constitute some evidence of the fact that Dr. Thomas had entered into an oral agreement with Pat Callaway to lease him the farm for the crop year of 1951, and the trial court properly refused to give an instructed verdict on the ground that there was no evidence that the tenancy contract had been renewed for the crop year of 1951.

Appellant's fifth point reads as follows:

"Issues numbered 12-A, 12-B and 12-C in the Court's Charge had no place therein for the law requires the appellees to account to the appellant for the profits made on the sale of the cotton seed in question and there was, and is, no issue of fact on the subject for the jury."

■ We sustain this point. These three issues related to the amount due Dr. Thomas by reason of the sale of cotton seed for planting purposes. It seems that when Callaway Bros. hauled said cotton to the gin they had the privilege of paying for the ginning and catching and hauling home the cotton seed, or they could sell the seed to the gin at the price prevailing at the time. The average daily price of the cotton seed was shown to be $79 per ton. Callaway Bros. saw fit to catch and haul home 54,950 pounds of cotton seed, and they accounted to Dr. Thomas for these seed at the price of $80 per ton. They sold some of

these seed for planting at $150 per ton, and intended to use some for planting the next year. Appellees contended that they had a right to take these seed at the price which they would have been sold to the gin company. In this appellees were mistaken. In the absence of an agreement with Dr. Thomas or a well-recognized general custom, the seed caught and carried home by appellees would belong to the landlord and tenant as tenants in common and Dr. Thomas would be entitled to his share of the sales price whenever the cotton seed were sold. Southwestern Investment Co. v. Green, Tex.Civ.App., 19 S.W.2d 102; Rhoades v. Pointer, Tex.Civ.App., 243 S.W. 583; Tignor v. Toney, 13 Tex.Civ.App. 518, 35 S.W. 881; Fagan v. Vogt, 35 Tex. Civ.App. 528, 80 S.W. 664; Rogers v. McGuffey, 96 Tex. 565, 74 S.W. 753; Lamar v. Hildreth, Tex.Civ.App., 209 S.W. 167; Williams v. King, Tex.Civ.App., 206 S.W. 106; Burleson v. Earnest, Tex.Civ.App., 153 S.W.2d 869. Pat Callaway admitted that the cotton seed at planting time were worth $150 per ton and that he sold some of them at that price. The burden was upon appellees to account for these seed and their failure to do so requires that they should be charged with them at the rate of $150 per ton. We understand from the figures set forth in both briefs, that Dr. Thomas' share of this increased price would amount to the sum of $436.30.

For the reasons above set forth, we sustain appellant's "Point six."

Appellant's points seven and eight, as we understand them, present the contention that appellant's objections to the submission of Special Issues Nos. 13 and 14 should have been sustained, because appellees had judicially admitted that no oral contract for the leasing of the farm for the crop year 1951 had been made. We have heretofore held that no such judicial admission had been made and accordingly overrule these points.

Appellant's Point Nine is:

"The trial court, in Issues 15, 16, 17 & 18, attempted to submit the elements of an implied lease of appellant's land to appellees for the crop year 1951, by estoppel. Neither the pleading or evidence raised the elements of an implied lease, nor do said issues properly submit the questions necessary to create an estoppel of appellant; therefore, appellant's objections to such issues should have been sustained."

■ We overrule this contention. The pleadings and the evidence were sufficient to raise the issue of an implied lease by estoppel and the issues submitted were proper.

Appellant's points ten to sixteen, both inclusive, present many objections to the submission of special issues Nos. 19, 20 and 21. His first contention is that the court erred in submitting these issues because in doing so the court presumed that the writ of sequestration was wrongfully sued out. We do not agree with this contention. Whether or not the writ of sequestration was wrongfully sued out by Dr. Thomas and the Callaway Brothers ousted from the farm depends entirely on whether or not the Callaways had a lease on the farm, either expressed or implied, for the crop year 1951. This matter was fully submitted by the court to the jury by other issues preceding issue No. 19, and having done so it was proper for the court to inquire as to the amount of damages. It is perfectly apparent from the record that appellees, Callaway Bros., were injured by being dispossessed of the farm belonging to Dr. Thomas in the amount of these damages, and whether or not they should have been entitled to judgment for same depended upon the existence of a lease contract for the crop year 1951. If the jury had found that the Callaway Bros. had no lease contract for the crop year 1951, then, of course, they could not recover their damages. However, if the jury found that they were entitled to the farm for the crop year 1951, then they would be entitled to recover their damages, and it was necessary for the court to have the jury determine the amount of these damages.

As far as issues Nos. 19 and 20 are concerned, they need not have been submitted to the jury. It is perfectly apparent that appellees had suffered damages by reason

of being dispossessed of the farm and that Dr. Thomas knew when he ousted them that they would in all probability suffer damages. These two issues being superfluous, we will not further consider the objections made to them by appellant.

Issue No. 21 inquired as to the amount of damages suffered by appellees and as a guide in arriving at this amount the court gave the following instructions:

"(1) Such necessary and reasonable expenses, if any, actually incurred prior to January 18, 1951, by Callaway Brothers in preparing the land for the 1951 crop; and

"(2) The net profits, if any, as hereinafter defined, that Callaway Brothers in all reasonable probability would have received from their cultivation of property in question in 1951, if they had not been dispossessed; less, however, such sums as Callaway Brothers might reasonably be expected, in the exercise of reasonable diligence, to realize after such dispossession by otherwise employing their time, labor and equipment which they would have employed on such crops.

"The term 'net profits' as used hereinabove means the gross value of the tenants' stipulated share of the crops, if any, which Callaway Brothers could be reasonably expected to have raised on the premises in the crop year 1951, if they had been permitted to do so, less all necessary expenses which they might be reasonably expected to have incurred, from the beginning of preparation for the crops, in preparing for, planting, cultivating, caring for, gathering, ginning and marketing both the landlord's and tenants' share of such crops."

■ Appellant contends that in addition to these instructions the court should have told the jury that it was the duty of Callaway Brothers to minimize their damages by using due diligence to lease other land for the crop year of 1951 or by seeking employment. We overrule this contention. The burden of pleading and proving the defense of mitigation of damages rested upon appellant and it was his duty to request proper issues and instructions concerning this matter if he desired to have same submitted to the jury. In Morgan v. Young, Tex.Civ.App., 203 S.W.2d 837, 848, the court said:

"However, if defendant breached his obligation to minimize his damages from plaintiff's breach of contract, defendant's failure to minimize constituted a defense in plaintiff's favor to defendants' cross action against plaintiff (to the extent just noted) which plaintiff had to plead and prove; and plaintiff was under the burden of procuring the trial court to submit this defense to the jury. We note that plaintiff in his supplemental petition assumed the burden of pleading (to some extent, at least) the matters he raises under Points 4 and 16. (1) Respecting the location of the burden of proof, and the type of proof required to meet this burden see Belcher v. Missouri, K. & T. Ry. Co., 92 Tex. 593, 50 S.W. 559; * * * (many other cases cited)."

To the same effect are the following cases: Belcher v. Missouri, K. & T. Ry. Co., 92 Tex. 593, 50 S.W. 559; El Paso & Southwestern Ry. Co. v. Eichel & Weikel, Tex.Civ.App., 130 S.W. 922; Meadolake Foods, Inc., v. Estes, 148 Tex. 13, 219 S.W.2d 441; Wright v. Davis, Tex.Civ. App., 193 S.W.2d 294, 295.

The instructions given by the trial court as to the measure of damages, in the light of appellant's objections, do not constitute reversible error. In Drinkard v. Anderton, Tex.Civ.App., 280 S.W. 1076, 1078, the Court said:

"Where there is a breach of a contract for rental of land 'on the halves' and an eviction of the tenant from the rented premises, our Supreme Court has held that the tenant's damage is to be ascertained by finding the value of his contract to him, or, in other words, the pecuniary benefits which would have accrued to him had he been allowed to fully perform it. That court has further held that, where the

tenant bases his claim for damages on the value of his stipulated share of the crops which he might be reasonably expected to have raised on the rented premises, the proper measure of his damage is such value, less all necessary expenses which he might be reasonably expected to have incurred in planting, cultivating, gathering, and marketing such crops, and less such further sum as he may be reasonably expected, in the exercise of ordinary diligence, to realize by otherwise employing his labor and the labor of the members of his family which he would have employed on such crops. * * * Such rule has also been applied by the Courts of Civil Appeals in cases where the renting was on the 'third and fourth,' as in this case."

■ The jury finding that appellees had sustained actual damages in the sum of $15,000 is supported by the evidence and is not contrary to the overwhelming preponderance of the evidence.

Appellant's points 17 to 21, both inclusive, complain of the submission to the jury of special issues Nos. 22 through 27. We have carefully examined appellant's objections to these issues and find them without merit. The mere submission of special issues to a jury can seldom constitute reversible error. Prejudicial error must be shown. Anderson v. Broome, Tex.Civ.App., 233 S.W.2d 901; Rule 274, T.R.C.P.; McMahan v. Musgrave, Tex.Civ.App., 229 S.W.2d 894; Southwest Stone Co. v. Symons, Tex.Civ. App., 237 S.W.2d 380; Niles v. Parsons, Tex.Civ.App., 239 S.W.2d 740.

By his points twenty-two, twenty-three and twenty-four, appellant contends that special issues Nos. 28 and 29 should not have been submitted to the jury, in that there was no evidence that appellant in suing out the writ of sequestration was actuated by malice. As a result of the jury's answers to these two issues appellees were awarded judgment in the sum of $5,000 as exemplary damages.

■ There is no evidence in the record to show that appellant acted with malice in causing the writ of sequestration to issue.

Appellees admitted that appellant had never told them, in so many words, they could have the farm for the crop year of 1951. There is nothing in the record to indicate that appellant did not honestly believe that he had not leased his farm to appellees for the crop year 1951. He was the owner of the farm and would be entitled to its possession, unless he had leased it to appellees. Under such circumstance there is no evidence of malice and without malice there can be no recovery of exemplary damages. 38 Tex.Jur. 276, Sequestration, § 110; Millheisler v. Wheeler, Tex.Civ.App., 265 S.W. 768.

Accordingly, the judgment of the trial court will be reformed by deducting from the amount of the judgment the sum of $436.30, appellant's one-fourth of the increased price of the cotton seed hauled home by appellees, and the further sum of $5,000 allowed as exemplary damages, thus leaving a principal recovery in the sum of $13,624.74, and as thus reformed the judgment will be affirmed.

Reformed and affirmed.