**John PHILLIPS, Appellant,**

**v.**

**John H. COOK et al., Appellees.**

**No. 12850.**

Court of Civil Appeals of Texas.

Galveston.

July 21, 1955.

Rehearing Denied Oct. 6, 1955.

George P. Willis, El Campo, and Cullen B. Vance, Edna, for appellant.

Hamblen & McNeil; William H. Hamblen, and W. T. McNeil, Edna; and Armond G. Schwartz, Hallettsville, for appellees.

CODY, Justice.

This was a suit by John H. Cook and Joe W. Kolos, appellees, against appellant,

John Phillips, to recover for lost profits by reason of the breach of an alleged verbal rice farming contract. The facts were somewhat unusual. Appellant did not own the land on which the rice crop was to be grown but the same was owned by John W. Stormont and wife and it was contemplated that appellant should rent the land from the Stormonts for 10% of the net value of the rice crop and in turn rent the land (consisting of 259 acres) to appellees for shares of the rice crop to be grown. Appellant did own a tract of land contiguous to the Stormont 259 acres and there was a well situated on appellant's said land and the water to be used in irrigating the rice was to be pumped from said well. The Stormonts were not parties to this law suit.

Appellant's defense against appellees' suit was that his agreement with appellees was made contingent upon the consummation of a lease contract between him and the Stormonts and that such lease contract was never consummated.

■ All question of whether the lease contract between appellant and the Stormonts was consummated aside, the contract between appellant and appellees was that appellees were to manage the farming operations and furnish the necessary labor and machinery and pay one-half of the cost of the fertilizer, hauling and storage; whereas, appellant was to furnish the land, seed and water and also pay the other one-half of the cost of the fertilizer, hauling and storage. And, as between appellant and appellees, the profits were to be divided one-half to appellant and the other one-half to appellees. Upon the trial the court submitted the case to the jury upon 16 special issues. After the coming in of the verdict appellant seasonably urged his motion for judgment non obstante veredicto, which the court overruled. And the court, upon appellees' motion therefor, rendered judgment for appellees against appellant upon the jury's findings in the sum of $5,380.50 together with interest at the legal rate from the date of judgment, etc. Appellant has predicated his appeal upon 8 formal points, which cover more than three pages of his brief. This prevents the points being set forth in this opinion. It is not contemplated under the briefing rules that they should be set forth where they cover more than one page of the brief, Rule 418, Section (b), T.R.C.P.; however we will discuss appellant's points and give the substance.

The court did not err by inquiring of the jury, in special issue No. 2, whether appellant on or about November 28, 1953, entered into a verbal lease contract with appellees under which they were to farm rice on the 259 acres of the Stormont land in Jackson County in 1954. The jury answered said special issue "yes".

In so far as appellant contends that appellees' allegations were not sufficient to support the submission of said special issue, such contention is without merit. We will not encumber this opinion with appellees' pleadings which support the submission of said special issue. It is sufficient to say that appellees did not specifically allege that it was agreed that the land in question was to be farmed to rice during the year 1954. But no other year could have been implied from appellees' allegations. Appellant clearly understood this and in the third paragraph of his answer he alleged, " * * * This defendant says that if there was in fact any agreement consummated between him and the plaintiffs for the farming of rice during the crop year of 1954, which defendant denies, then such agreement was contingent on the continued ownership of the land [on which the well was situated] by defendant and was subject to defendant's proposed sale of the land * * *." (Emphasis supplied.) If there was any deficiency in appellees' allegations that the agreement covered the crop year 1954 appellant's allegations clearly supplied said deficiency. The evidence was also ample.

■ We further hold that there were sufficient pleadings and evidence to warrant the submission of special issue No. 16, which, in substance, as answered by the jury, found: "$6.60 per barrel would have been the fair and reasonable cash market value at Edna, Texas, of rice of the quality which we, the jury, find appellees could

have raised in 1954 from the land in question, at the time we, the jury, find it should have been ready for marketing." First, we will discuss the matter of the sufficiency of the pleadings. There is in all reason enough hurry and confusion surrounding the preparation of the court's charge at the conclusion of the evidence. If a party should be allowed to make use of exceptions to the submission of special issues to the jury to perform the function of special exceptions to the pleadings, much unnecessary added confusion would result. It does not appear from the record in this case that the pre-trial procedure contemplated by Rule 166, T.R.C.P., was followed. Consequently Rule 175, T.R.C.P., controls here, and it provides: "When a case is called for trial in which there has been no pre-trial hearing as provided by Rule 166, the issues of law arising on the pleadings, all pleas in abatement and other dilatory pleas remaining undisposed of shall be determined; * * *." What appellant here assails as being insufficiency of appellees' pleadings are such defects as should have been reached and corrected by special exceptions. Said pleadings were general and alleged, " * * * and said 2590 barrels of rice would have a market value of Ten and No/100 ($10.00) Dollars per barrel, or a total of Twenty Five Thousand Nine Hundred and No/100 ($25,900.00) Dollars." Thus, appellees did not plead the kind or quality of rice, the time it would have been marketed and the place of marketing. By special exceptions in accordance with Rule 91, T.R.C.P., appellant could have required appellees to plead with all particularity which he might desire.

Now it is not essential to the statement of a good cause of action that the petition set out a proper legal measure of damages. "A statement of the facts essential to a cause of action is all that good pleading requires." Lloyds America v. Payne, Tex.Civ.App., 85 S.W.2d 794, 795, 796. And it is certainly not necessary to establish each item with mathematical certainty. "The facts surrounding the contract and parties should be given to the jury, and they are allowed much discretionary power in arriving at a verdict; it is largely left to their judgment on the evidence before them. * * * In this state it is now the settled law in tenancy contracts upon shares to treat the parties to the contract as having entered into a joint business enterprise, stipulating what shall be the advantage of each. When one deprives the other of those advantages, he should be required to compensate him for that which the contract stipulated he should have." Lamar v. Hildreth, Tex.Civ.App., 209 S.W. 167, 171, writ refused; and see Rogers v. McGuffey, 96 Tex. 565, 566, 567, 74 S.W. 753, 754, where Judge Williams likens a contract for renting land on shares of the crops to a contract of partnership, and the court stated, " * * * that, in actions for breach of a contract of partnership, inquiry as to the probable profits of the business is admissible, and that such profits can be recovered." Without further prolonging the discussion of this point, it is sufficient to state that the evidence was ample to support the answer of the jury to special issue No. 16.

We have carefully examined the relevant evidence and have concluded that the same was sufficient to warrant the submission of special issue No. 1, inquiring of the jury if appellant entered into a verbal agreement of lease with Mr. and Mrs. Stormont on or about November 28, 1953, to farm the 259 acres to rice during the year 1954. And while said evidence was not sufficient to compel, it was sufficient to support, an affirmative answer to said special issue which was by the jury made.

The evidence in this case showed that in compliance with the urging of Mr. Stormont, acquiesced in by appellant, appellees began preparing and plowing the Stormont land the Monday following November 28, 1953, to the end that the 1954 crop should mature and be marketed early. The evidence further showed that appellant had a prospective purchaser for his farm with the well on it whence the water was to be supplied to make the crop on the Stormont land. However, such prospective purchaser was not able for some time to arrange to make a satisfactory cash payment in the

purchase of appellant's said land. From the evidence, indeed from the testimony of appellant, it could be reasonably inferred that appellant considered that there was a loophole in his lease contract with Mr. Stormont and that he occupied the position where if it suited his plans he could claim he had not leased the Stormont land; whereas, on the other hand, if the prospective sale fell through, it could be inferred from appellant's testimony that he could keep quiet and stand on the lease contract of the Stormont land, and on the tenancy contract on shares with appellees. From appellant's own testimony it is clear that he permitted appellees to go forward in preparing the Stormont land for the 1954 crop, spending their money and labors to that end, concealing from them and from Mr. Stormont that he was waiting to see which was more to his advantage, to stand on the lease contract and tenancy contract or to go forward with the prospective sale contract. Appellant did sell his farm with the rice well on it but he never did tell appellees. The gentleman who was to advance them money to make the crop heard of it and notified them about February 1, 1954. Appellee Cook went to see appellant at El Campo and this fact was confirmed. However, under advice of counsel, appellees stayed in possession of the land to establish that there was no mutual rescission until they were notified by Mr. Stormont to vacate the property, as hereafter stated.

By letter dated March 11, 1954, Mr. Stormont informed appellees that appellant had notified him that he did not intend to farm rice on the Stormont land in 1954 because he had sold his farm with the well on it. Mr. Stormont further stated in the letter that without the water from the well appellees could not farm the land and that he had an opportunity to lease the same for the 1954 crop, and notified appellees to vacate the land. We hold that the court did not commit reversible error in not sustaining appellant's exceptions to appellees' pleading of the notice given by the letter and of its contents, nor did the court err in admitting the letter into evidence. The agreements of the Stormonts and appellant,

on the one hand, and of appellant and appellees, on the other, were interwoven. And the letter was a formal notice to appellees to vacate, giving the reason therefor. There could have been no prejudice in any event to appellant because the same information contained in the letter was brought out by the testimony of Mr. Stormont when he testified as a witness. Indeed, as pointed out above, the jury could reasonably have inferred from the testimony of appellant that he did not intend to farm the Stormont land because he had sold his farm on which the rice well was located. It was proved that Mr. Stormont, by a written memorandum of agreement dated January 4, 1954, included certain provisions which had not been included in the verbal agreement made on November 28, 1953, relative to the terms of the contract leasing the Stormont land to appellant. Mr. Stormont executed said memorandum of agreement and sent it to appellant for execution. Said memorandum of agreement was evidence from which the jury might have found that Stormont and appellant did not consummate an oral lease agreement of the Stormont land on November 28, 1953. On the other hand, from the evidence the jury was warranted in reasonably concluding that the parties did consummate the lease agreement by a verbal contract on November 28, 1953, and that this written memorandum contained an offer or proposal to make certain alterations, which, if accepted, would to that extent supersede the oral agreement and which, if rejected, would leave the verbal agreement in full force.

All this time appellant spun out time and seemed to be complying with the verbal agreement. He went to Houston to see about swapping the pump for a more powerful one, which he was to do under the agreement of November 28, 1953, and he did not reply to Mr. Stormont while he was negotiating the sale of the farm with the well on it.

Appellant sought to ask Mr. Stormont a number of hypothetical questions, which are too long to be set out here, as to whether he would have abided by the written memorandum had appellant signed and returned

it. The bill of exceptions shows that Mr. Stormont testified that he would have abided by the written memorandum had it super-seded the verbal agreement, but the evidence further showed that he would have abided by the verbal agreement unless and until so superseded. We hold that the court did not err in excluding the answers to such hypothetical questions. They amounted to no more than this: that had appellant con-sented to alter the contract of lease ac-cording to the proposed terms of the written memorandum, Mr. Stormont would then have abided by such terms. The questions called for hypothetical answers which were not shown to have any basis and which were not relevant and could only have been con-fusing to the jury.

In special issues Nos. 5 to 10, inclusive, the court inquired of the jury (1) if ap-pellant made false representations, or con-cealed material facts from appellees as to his intended sale of land on which the rice well was situated, and (2) in that connec-tion submitted the usual subsidiary issues. We think there was no pleading of appellees to justify the submission of said special issues. Appellees' only contention as to the pleading which would justify said submis-sion is that they plead that appellant is now estopped to deny the execution of said contract in that defendant, knowing of the preparation being made by plaintiffs and the expense being incurred by them in re-liance upon his agreement, made no ob-jection to same nor indicated that he did not intend to carry out said agreement.

While it is doubtless the law that the allegation of estoppel in a proper case is sufficient to authorize the submission of an issue on false representation, see 17 Tex. Jur. 137, Sec. 9, appellees were seeking here to recover their share of the profits under and by virtue of a tenancy contract. Ap-pellees might have, by an alternative plea, sought to recover on estoppel but we do not understand that a party can in the same breath seek to recover upon a contract and, in the absence of a contract, by estoppel. However, it is the settled law of this state that "The mere submission of special issues to a jury can seldom constitute reversible

error. Prejudicial error must be shown." Thomas v. Callaway, Tex.Civ.App., 251 S.W.2d 921, 927.

We have carefully considered the two other points raised by appellant and find no merit in them.

The judgment is affirmed.