**FIRST NATIONAL BANK OF BROWN-
WOOD et al., Appellants,**

v.

**Delbert CHAMBERS, Appellee.**

No. 3988.

Court of Civil Appeals of Texas.

Eastland.

Oct. 15, 1965.

**314**

E. P. Woodruff, Jr., Gib Callaway, Brownwood, for appellants.

G. A. Day, Brownwood, for appellee.

COLLINGS, Justice.

Delbert Chambers brought suit against the First National Bank in Brownwood for conversion. Plaintiff alleged that he had pledged an "open" automobile title with the bank to secure a loan and that the bank thereafter wrongfully delivered such title to another and deprived plaintiff of the value of the car in the amount of $1,395.00. The defendant bank answered admitting that it was unable to deliver the title in question to plaintiff, but alleged that it had delivered such title to one Jack Allen, who was a partner, agent or apparent or ostensible agent of plaintiff. The defendant bank also filed a third party cross action against Allen alleging that it was entitled to recover from him any amount that plaintiff might be found entitled to recover from the bank. Allen answered alleging that he and Chambers were partners in said transaction. He further alleged that upon receiving said title certificate from the bank he sold the car in question for $1,050.00, and by agreement with Chambers applied said amount to the payment of accounts in the sum of $2,002.00 owed by him and Chambers jointly for parts used to repair their partnership cars. The trial was before a jury which found that (1) Delbert Chambers was the owner of the 1961 Ford at the time the bank delivered the title to Jack Allen in March of 1963, (2) that prior to delivering such title to Allen the bank had received notice that Chambers was the owner of the car, (3) that the bank was unable to deliver the car title to Chambers on March 27, 1963, (4) that Allen and Chambers were not partners, (5) that Allen's action in obtaining certificate of title from Bank was not within the scope of a partnership, (6) that Allen was not the agent of Chambers when he got the car title from the bank, (8) that Allen was not the apparent or ostensible agent of Chambers when he got the car title from the bank and (9) that the reasonable market value of the Ford car on March 27, 1963, in Brown County, Texas was $1,395.00. Based upon the verdict, judgment was rendered for the plaintiff Chambers against the bank in the sum of $1,395.00, and that the bank recover the same amount from Jack Allen. The bank and Allen have appealed.

The appellant bank contends that the court erred in overruling its motions for an instructed verdict, for judgment non obstante veredicto, for a new trial and, in giving judgment against the bank for the

reason that Jack Allen was the partner of Chambers when he secured the car title from the bank; that the existence of such partnership was shown by the undisputed evidence and there was no evidence to the contrary, and that in any event, the finding that Allen and Chambers were not partners was so contrary to the great weight and preponderance of the evidence as to be clearly wrong. In its second point it is contended that the court erred in rendering judgment against appellant bank for the reason that Allen was the authorized agent of appellee, Chambers, as shown by the undisputed evidence and that there was no evidence to support the finding that Allen was not such agent, and that in any event such finding was so contrary to the great weight and preponderance of the evidence as to be clearly wrong. In appellant bank's third point it is contended that the court erred in rendering judgment against appellant because the undisputed evidence showed that Allen was the apparent or ostensible agent of plaintiff when he secured the car title from the bank, and that there was no evidence to support the finding to the contrary; that, in any event, such finding of the jury was so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

Appellant, Jack Allen, presents points substantially the same as those urged by the bank. Allen also urges points contending that the court erred in refusing to grant his motion for an instructed verdict on the ground that the undisputed evidence showed that Chambers suffered no damage because of the bank's delivery to Allen of the car title in question; that Chambers had expressly agreed to the sale of the car by Allen; that Allen in compliance with the agreement did sell the car and receive a draft of $1,050.00 therefor, that he showed the draft to Chambers and was instructed by Chambers to apply such proceeds to the payment of debts owed by them for parts used on their partnership cars.

In connection with the questions of partnership, agency and apparent agency, the evidence shows that sometime in 1959, Delbert Chambers began the practice of buying used cars and selling them; that Allen was a used car dealer with a place of business in Brownwood and that he entered into an agreement with Allen to the effect that Allen would undertake to sell used cars turned over to him by Chambers and would receive a commission on the sale of such cars. There was evidence to the effect that sometimes a car would need to be repaired. Although Allen testified to the contrary appellee testified he would always pay Allen for such repairs before the car was sold. There was also a conflict in the testimony as to whether under the agreement between appellee and Allen that Allen would share in any losses suffered by appellee. Allen, in fact, never shared any losses on cars which he sold for appellee, and the indication is that there were no losses.

The evidence shows that Chambers had been a customer of appellant First National Bank since 1956. Appellee testified that he had maintained a checking account with the bank and had borrowed money there in connection with purchasing used cars with the intention of selling them. The evidence indicates that appellee Chambers spent only a part of his time in the business of buying and selling used cars. When he bought a used car he would turn it over to Jack Allen for sale. Sometimes Allen located such a car and recommended it to Chambers. Chambers testified that on occasions he borrowed money from the bank in connection with purchasing such used cars, and would pledge an "open" automobile title with the bank to secure loans; that an "open title" was one which had been signed but the name of the new owner was not filled in, and that such title could be negotiated simply by filling in the purchaser's name. The evidence shows that in the beginning of the arrangement between Chambers and Allen, Allen had permission when a sale was made to go to the bank and obtain the open title involved. On one prior occasion Allen had obtained

the car title to a 1957 Chevrolet automobile; had then sold the car and converted the money to his own use. Thereafter, Mr. Felton Dewbre, who at that time was an officer of appellant First National Bank, as Assistant Vice-President, advised appellee to let no one but himself get the car titles which had been pledged with the bank as security; that appellee Chambers then instructed Mr. Dewbre, as officer of appellant bank, not to deliver car titles to anyone but himself, and thereafter when Allen sold one of appellee's cars upon which the bank held the open title as security, Allen would call appellee and advise him that the car was sold. Appellee would then meet Allen at the bank and obtain the title to such car for delivery to the purchaser. On a previous occasion Allen had tried to obtain a car title, from the bank and had been refused. He had called appellee, Chambers' wife, and requested her to obtain the title from the bank but when she called the bank she was advised by Mr. Dewbre to wait until appellee got back to town so that he could handle the transaction.

◼ One of the loans which appellant bank made to appellee Chambers was in the sum of $1,200.00 and appellee executed a note for that amount and delivered to the bank the "open title" to a 1961 Ford automobile as security. There is ample evidence to support the finding that appellee Chambers was at all times material hereto the owner of such Ford automobile. The evidence indicates that the practice of giving an open or negotiable car title as security was customary by appellant bank at that time. Chambers testified that on or about March 27, 1963, he went to the bank and asked for the return of the title to the Ford automobile in question. He talked to the bank official, Mr. Felton Dewbre, and was informed that the bank did not have the open title to such automobile but that Jack Allen had picked up the title. Appellee Chambers testified that the reasonable market value of the car in question at that time in Brown County was $1,395.00. Mr.

Dewbre thereupon called Allen on the telephone and asked for a return of the car title or the money and was apparently advised by Allen that the Ford automobile had been sold. Dewbre informed appellee Chambers that the car was gone and that the title thereto could not be delivered. Mr. Dewbre also advised Chambers that he did not know how Allen got the car title out of the bank. Mr. Dewbre further testified that he scrutinized everything that Allen did with the bank concerning the used automobiles upon which the bank held the open title as security for loans to Chambers. He stated that he knew Chambers was the owner of such automobiles; that it was his responsibility to see that the notes were paid on the car titles when taken from the bank; that appellee did not authorize the bank to deliver the car title in question to Allen and had nothing to do with Allen securing the open title to such car. Allen owned no interest whatever in the 1961 Ford car in question. Although Allen testified to the contrary Chambers denied that Allen was ever his partner, agent or employee.

◼ A partnership has been defined as a contract of two or more competent persons, to place their money, effects, labor and skill or some or all of them in lawful commerce or business, and to divide profit and bear the loss in certain proportions. 68 C.J.S. Partnership § 1, page 398; Burr v. Greenland, Tex.Civ.App., 356 S.W. 2d 370, (Ref. N.R.E.); Winslow v. Boyd, Tex.Civ.App., 195 S.W.2d 384. A partnership contract may be oral or written, express, or implied from the conduct of the parties. It may be general or limited as agreed between the parties. Although a partnership is ordinarily formed for the transaction of a general business of some particular kind its purpose may be for the prosecution of a single adventure or transaction. It is not claimed by appellants that there was a general contract of partnership in this case. Appellants contend only that it was a partnership, involving specific transactions between the parties. Ap-

pellants who asserted the existence of the partnership had the burden to establish it. The jury found against appellants on the issue, but appellants contend that the evidence conclusively shows the existence of the partnership and that the finding of the jury is without support and is contrary to the evidence. It is our opinion, however, that the finding of the jury that Allen and Chambers were not partners is not contrary to the evidence, but is amply supported thereby.

The evidence shows that Chambers was the owner of the automobile here involved. The evidence also shows without dispute that there was an agreement between Allen and Chambers for a sharing of the profits on automobiles owned by Chambers which were sold by Allen. There is support for the conclusion that there was no agreement for a sharing of the losses by Allen and that, in fact, there were no losses and that Allen never shared any loss on a car which he sold for Chambers. Generally, the partner relationship is not created unless each of the parties is bound, either expressly or by implication, to participate in the losses sustained in the business or individual transaction. However, where the parties clearly manifest an intention to form a partnership such intention is controlling in spite of the fact that under the agreement one of the parties is not required to share in the losses. It is said that the intention of the parties constitutes an important, if not the only, true test of partnership. 68 C.J.S. Partnership § 20 page 433. Appellee Chambers testified that the parties had no intention to, and did not become partners. The evidence, in our opinion, supports the conclusion that the sharing of the profits by Allen was not "[a] community of profit and interest in profits as profits, as distinguished from interest therein as compensation under profit sharing agreement." Tanner v. Drake, 124 Tex. 395, 78 S.W.2d 162. It appears that the evidence shows the existence of some of the elements of a partnership but indicates the lack of other ele-

ments thereof. In this state of the record the existence of a partnership was a question of fact for the fact finder. The burden was on appellants to establish the partnership. Contrary to appellants' contention, the evidence did not conclusively show a partnership and there was ample evidence to support the finding of the jury that there was no partnership. There was some evidence to the contrary, but a consideration of the evidence as a whole does not show that it was insufficient to support the jury finding or that such finding was against the great weight and preponderance of the evidence. We overrule the points of both the Bank and Allen complaining of the lack, and the insufficiency, of the evidence to support the jury finding that Chambers and Allen were not partners.

Appellants' points complaining of the lack and insufficiency of the evidence to show that Allen was the actual or apparent agent of appellee Chambers are likewise not well taken. The jury found against appellants on the agency issues. The evidence does not show that either Chambers or Allen held themselves out to be the agent of the other. On the contrary, on the occasion of the delivery of the car title in question to Allen, the Bank was under specific instruction not to make such a delivery and was on notice that Chambers, who was the owner, did not desire Allen to secure the title thereto except upon his specific instruction.

Appellant Allen also contends that the undisputed evidence conclusively shows the existence of a partnership or agency between him and Chambers because Chambers had expressly instructed him to sell the automobile in question. The evidence does show that Chambers instructed Allen to sell the car but the evidence supports the conclusion that the Ford automobile was delivered by Chambers to Allen with instructions to sell under an agreement that Allen would receive a commission for such sale. Allen also contends that after he sold the automobile upon in-

structions from Chambers that he received a draft from the purchaser in the sum of $1,050.00; that he showed the draft to Chambers and Chambers instructed him to apply the money when collected to the payment of what they owed for parts used on prior partnership cars. No issue was submitted to the jury inquiring whether the parties owed any sums of money on such cars or whether or not Chambers instructed Allen to make any such application of the money which he received from the sale of the car in question. Chambers testified that any expense for repairs or parts to his cars which were sold by Allen was paid prior to such sales, and that nothing was owed by him for any repairs or parts to any of such cars. Appellants' contention in this respect is not well taken and is overruled. At most only a question of fact was presented and this was waived when Allen failed to request the submission of an issue to the jury thereon. It is presumed in support of the judgment that the court found the issue against Allen's contention.

The judgment of the trial court is affirmed.