**James C. SHINDLER, Ralph E. Reamer and Eaglewood Associates, Ltd., Appellants,**

v.

**MARR & ASSOCIATES, Ronald Marr, Brant Matz and Arthur Don Chase, Appellees.**

No. 01–84–0383–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 3, 1985.
Rehearing Denied Aug. 15, 1985.

Daniel C. Pappas, Douglas A. Sandvig, Kissner & Pappas, P.C., Houston, for appellants.

Bernard W. Fischman, Patricia L. Casey, Lackshin & Nathan, Houston, for appellees.

Before JACK SMITH, SAM BASS and LEVY, JJ.

## OPINION

LEVY, Justice.

Marr & Associates, licensed real estate brokers, initially sued Eaglewood Associates, Ltd. ("Eaglewood"), a limited partnership, for breach of a written contract to recover a $60,000 brokerage commission (plus interest and attorney's fees) for finding an investor (the "Diversified Shelters Group, Inc.") in limited partnership interests in the Eaglewood apartment project. James C. Shindler, Ralph E. Reamer, and Theodore C. Bentley were also sued as general partners of Eaglewood.[1] Upon defendants' objection to Marr & Associates' standing to sue as representative plaintiff, plaintiffs obtained leave of court to substitute Brant Matz, an employee/broker of Marr & Associates at the time, as plaintiff in the place of Marr & Associates as the real party in interest, and he was later joined by Arthur Don Chase and Ronald Marr as co-plaintiffs.

Bentley, acting as managing partner of Eaglewood, signed a letter confirming a brokerage commission agreement on July 19, 1977, with Marr & Associates, and subsequently Matz successfully negotiated certain financing for the construction of an apartment project in Harris County, Texas, by Eaglewood. At the closing, defendants refused to pay Matz the $60,000 finder's fee, claiming that they were not operating as a limited partnership on July 19, 1977, when Bentley signed the agreement, that Bentley was not authorized to act for them, and that the fee was not payable until after certain additional services were performed.

Trial was to a jury which found, inter alia, that a partnership existed among the defendants on July 19, 1977, that such entity operated as a limited partnership on that date, that Bentley's execution of the commission agreement was within the course and scope of the partnership business, and that the plaintiffs had performed their part of the agreement. Judgment for the plaintiffs included an award of prejudgment interest and attorney's fees and also made final the prior interlocutory judgment in favor of defendants, as third-party plaintiffs, against D.S.G. Bentley did not appear at trial and has not appealed from the final judgment which is recoverable against him and the appellants, jointly and severally.

Appellants raise six points of error on this appeal, and we will address them seriatim.

Appellants' first point of error asserts that there was no evidence to support the submission of special issue number 1 or, alternatively, the jury's answer to such issue was against the great weight of the evidence. Special issue number 1 inquired, "Do you find from a preponderance of the evidence that Eaglewood Associates, Ltd., operated as a limited partnership on July 19, 1977?" to which the jury responded affirmatively.

Appellants contend that they could not have operated as a limited partnership on July 19, 1977, because the certificate of limited partnership was not filed with the Secretary of State until December 5, 1977.

A "limited partnership," being a creature of statute, typically consists of general partners who conduct the business and are personally liable to creditors as in an ordi-

---

1. These defendants filed a third-party action against Diversified Shelters Group, Inc. ("D.S.G."), the limited partner and equity investor, and obtained an interlocutory default judgment against D.S.G. for indemnity to the extent of any amount in excess of $35,000, plus attorney's fees. D.S.G. is not appealing.

nary partnership, and of limited partners who do not participate in management and whose liability is limited to the amount of their contributions; *see* Tex.Rev.Civ.Stat. art. 6132a, sec. 3(a)(1) (Vernon 1970).

■ Strict compliance with the applicable statutes is not required for the formation of a limited partnership. Article 6132a, sec. 3(b) provides, "a limited partnership is formed if there is substantial compliance in good faith with the requirements ..."

In *Garrett v. Koepke*, 569 S.W.2d 568 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r. e.), the certificate of limited partnership had not been filed but the limited partners did not lose their limited liability status when they were sued for a debt resulting from a breach of a lease provision requiring the limited partnership to display a motel sign. The rationale by the *Garrett* court in affording limited partnership status is that the statute is primarily for giving notice and the plaintiffs already had actually received the information that would have been provided by compliance with the statute prior to dealing with the limited partnership.

Similarly, in *Voudouris v. Walter E. Heller & Co.*, 560 S.W.2d 202 (Tex.Civ.App. —Houston [1st Dist.] 1977, no writ), the certificate of limited partnership had not been filed. There was uncontradicted testimony, however, that the defendant intended to enter only a limited partnership, that he took no part in the business management, and that he gave up his interest in the business soon after discovering that the limited partnership certificate had not been filed. The court held that the defendant had limited partnership status.

In *Laney v. Commissioner*, 674 F.2d 342 (5th Cir.1982), it was held that there had been "substantial compliance" with the requirements for the formation of a Texas limited partnership and that substantial compliance was sufficient for its qualification as such. The mere fact that limited partnership articles had not been filed until January of 1972 did not preclude a limited partnership from coming into being before that time and did not create a general partnership in the interim where the *only* element missing for the formation of a limited partnership was the filing of the articles and the payment of the filing fee.

■ The Texas Uniform Limited Partnership Act (TULPA) is designed to be a *uniform* act, consistent with the law of the enacting states. Tex.Rev.Civ.Stat. art. 6132a, sec. 28(b) (Vernon 1970). A California appellate court, in *Stowe v. Merrilees*, 6 Cal.App.2d 217, 44 P.2d 368, 369 (1935), has held that the act is to be liberally construed and does not require a fixed time for filing and recording limited partnership certificates. The purpose of the filing requirements under the act is primarily to provide notice to third persons dealing with the partnership of the essential features of the partnership arrangement. *Hoefer v. Hall*, 75 N.M. 751, 411 P.2d 230 (1966); *Tiburon National Bank v. Wagner*, 265 Cal.App.2d 868, 71 Cal.Rptr. 832 (1968); *Davis v. Davis*, 247 Or. 352, 429 P.2d 808 (1967). The nature and legal existence of a partnership do not depend upon any filing required by a statute. *Tracy v. Tuffly*, 134 U.S. 206, 226, 10 S.Ct. 527, 532, 33 L.Ed. 879 (1890). Since the appellees were clearly on notice that the entity with which they were dealing was in fact a limited partnership, appellants' failure to comply with filing the certificate before commencing operations is immaterial. *Garrett v. Koepke, supra.*

■ In order to establish a partnership *de facto*, neither a written nor an oral agreement is essential; a partnership relation may be implied from the facts and circumstances surrounding the transaction. *Freeman v. Huttig Sash & Door co.*, 105 Tex. 560, 153 S.W. 122 (1913); *Cavazos v. Cavazos*, 339 S.W.2d 224 (Tex.Civ.App.— San Antonio 1960, writ ref'd n.r.e.).

Such facts and circumstances are revealed by the record herein. The letter of July 19, 1977, confirming the $60,000 commission agreement, was signed by Theodore Bentley ("General Partner") on behalf of Eaglewood Associates, Limited. The record does not disclose that either Shin-

dler or Reamer ever repudiated the contract, or indicated opposition (before the closing) to the payment of a finder's commission, or that they refused to accept the benefits of the financing arranged by appellees and vitally needed for the construction of the Eaglewood apartment project. Between March 9 and July 19, 1977, Matz worked on the project to bring Bentley together with D.S.G., whose function would be to provide "equity partners," i.e., nonmanagerial silent investors. Matz's negotiations culminated in D.S.G.'s submitting on July 18, 1977, a letter of intent committing D.S.G. to provide Eaglewood Associates with equity financing through limited partnership interests. The letter of intent was signed "Agreed and Accepted" by Bentley, Reamer, and Shindler, and the next day, immediately upon receiving the letter, Bentley signed the commission agreement obligating the partnership to pay the $60,000 finder's commission upon completion of the equity financing.

Prior to filing the articles of limited partnership on December 15, 1977 (describing the partnership as consisting of Bentley, Reamer, and Shindler as general partners and D.S.G. as limited partner), the parties, consistently in the name of Eaglewood Associates, Ltd., took a conveyance of the property upon which the Eaglewood apartment project was to be constructed, made application to a savings association for an interim loan to finance acquisition of the property, and, further, applied for a first mortgage construction loan secured by the property.

The appellants admitted that Matz was the procuring cause of the D.S.G. financing; Shindler admitted that they operated as a partnership before the articles had been filed; and Shindler and Reamer each expressly acknowledged that they accepted the benefits of the commission agreement.

■ We conclude that by all these actions and admissions, the parties clearly manifested an intention to realize their goal of obtaining the financing necessary to construct the apartment project on the land held by the limited partnership. The apartment project was ultimately built as planned. It is the common intention to do the things that constitute a partnership that determines the relationship existing between the parties, whether the partnership agreement is oral or written, express or implied from the conduct of the parties in proceeding with the business of the partnership. *First National Bank of Brownwood v. Chambers*, 398 S.W.2d 313 (Tex. Civ.App.—Eastland 1965, no writ). If they intend to do a thing which constitutes a partnership, they are partners whether their express purpose was to create or avoid partnership. *Garrett v. Koepke, supra; Taylor v. Lewis*, 553 S.W.2d 153 (Tex. Civ.App.—Amarillo 1977, writ ref'd n.r.e.); *Howard Gault & Son v. First Nat'l Bank of Hereford*, 541 S.W.2d 235 (Tex.Civ.App. —Amarillo 1976, no writ); *First National Bank of Brownwood v. Chambers, supra.*

■ We hold that there was sufficient evidence before the jury from which it could reasonably conclude that the parties were operating as a limited partnership on the date in question, and that such finding is not against the great weight of the evidence.

We therefore overrule appellants' first point of error.

Point of error two asserts that special issue 2 should not have been submitted because the issue was not raised by the pleadings, nor was such issue tried by consent. Special issue number 2 inquired, "Do you find from a preponderance of the evidence that on July 19, 1977 a partnership existed between James C. Shindler, Ralph E. Reamer and Theodore C. Bentley?" to which the jury responded affirmatively.

■ The pleadings support the issue submitted to the jury. The appellees timely pleaded by trial amendment, pursuant to Tex.R.Civ.P. 67, that a general partnership existed among the three appellants, which amendment was allowed by the trial court. Appellants' argument that the issue was not tried by consent is irrelevant in light of the trial amendment, but the record shows that evidence establishing the existence of the partnership was admitted without ob-

jection by the appellants, thus constituting a trial of the issue by consent. *See Phillips v. Cook*, 282 S.W.2d 294 (Tex.Civ.App. —Galveston 1955, writ ref'd n.r.e.); *Sorenson v. Dawdy*, 196 S.W.2d 687 (Tex.Civ. App.—Fort Worth 1946, no writ). As general partners of the limited partnership, appellants would be liable in exactly the same capacity regardless of whether the partnership was general or limited on July 19, 1977. Thus, under the general partnership theory, it is inconsequential whether the certificate of limited partnership was timely filed. Tex.Rev.Civ.Stat.Ann. art. 6132a sec. 10 (Vernon Supp.1985).

The second point of error is overruled.

Point of error three asserts that special issue 2 was improperly submitted because the evidence established, as a matter of law, that Shindler, Reamer, and Bentley did not have a partnership established on July 19, 1977; alternatively, that the jury's answer to special issue 2 was against the great weight of the evidence.

The appellants argue that a partnership could not have been formed on July 19, 1977, because the letter of intent dated July 18, 1977, allegedly stated "... that certain tasks must be completed in the future before the partnership comes into existence." The letter of intent was addressed by Diversified Shelters Group, Inc. ("DSG"), to, and was signed by, Bentley, Shindler, and Reamer, described therein as the "General Partners."

The jury found that Bentley's signing of the commission agreement on July 19, 1977, for Eaglewood Associated, Ltd., was an act within the scope of the partnership enterprise, pursuant to special issue number 4. The other partners, Shindler and Reamer, accepted the benefits of the financing and remained silent as to the commission agreement. In actions involving contracts, ratification by one partner of the acts of another partner, whether authorized or unauthorized, may be inferred from the silence of the non-consenting partner. *Park Cities Corp. v. Byrd*, 522 S.W.2d 572, 578 (Tex.Civ.App.—Beaumont 1975), *rev'd on other grounds* 534 S.W.2d 668 (Tex.1976); *Tom v. First Nat'l Bank of*

*Midland,* 104 S.W.2d 130, 133 (Tex.Civ. App.—El Paso 1937, writ dism'd). By their silence, therefore, Shindler and Reamer ratified the commission agreement of which the record shows that they were fully aware, both of Bentley's intention before July 19 to execute the agreement and its actual execution shortly thereafter. Both men accepted the benefits of the commission agreement, and neither took any action to repudiate or express any disapproval of the agreement. Moreover, the partnership also used the name Eaglewood Associates, Ltd., to engage in activities within the scope of the partnership enterprise, activities performed prior to actual filing of the certificate, as discussed before.

The third point of error is overruled.

Point of error four asserts that the evidence established that no consideration was furnished to Shindler, Reamer, or Eaglewood Associates. Appellants argue that the services had already been performed ("past consideration") before there was a promise to pay by Bentley on behalf of the partnership (or limited partnership), and that past consideration will not support a contract.

Although Shindler and Reamer did plead, under oath, a lack of consideration, Eaglewood Associates filed no such pleading. Lack of consideration is an affirmative defense which must be specifically pleaded. *See* Tex.R.Civ.P. 93(9). Appellants failed to request the submission of any special issue or instruction on lack of consideration. The failure to request a submission of such special issue constitutes a waiver of the defense. *See* Tex.R.Civ.P. 279; *Stone v. Pitts*, 389 S.W.2d 601, 603–04 (Tex.Civ.App.—Waco 1965, no writ).

Even if the defense of lack of consideration was not waived, the proof establishes affirmatively that there was consideration for Bentley's promise on behalf of the partnership to pay the commission. An act done at the request of another, performed under such circumstances that the law will imply a promise to pay for it, signifies sufficient consideration for a subsequent express promise to pay for the act performed. *Banner Oil & Gas Co. v.*

**706**

*Gordon,* 235 S.W. 945, 948 (Tex.Civ.App.—Fort Worth 1921, writ dism'd w.o.j.). The letter of intent and the commission agreement, being mutually dependent, when construed together constitute an executory agreement to perform certain actions in the future—when D.S.G. performed by delivering funds, then the finder's commission would be due. If the appellants refused to accept such funding, then the appellees would probably be due no fee for their efforts—but all of the appellants testified that Matz and the appellees fully performed under the agreement, and the jury so found.

Appellants' fourth point of error is overruled.

Point of error five asserts that the appellants' motion for instructed verdict should have been granted because the four-year statute of limitations barred Matz's and Chase's action. Vernon's Ann.Civ.Stat. art. 5527.

The statute of limitations is an affirmative defense that must be pleaded, *see* Tex.R.Civ.P. 94, and the defense was affirmatively pleaded in appellants' second amended answer.

 Appellees offered their evidence and then appellants moved for an instructed verdict, which was denied, but they failed to reurge the motion at the conclusion of their own evidence. Appellants did reurge their motion for an instructed verdict in their motion for judgment n.o.v. Should the movant, after his motion is denied, offer additional evidence, he thereby waives his earlier motion and when he later moves again, the new motion is determined upon all the evidence, regardless of by whom it is offered. *Hydro-Line Mfg. Co. v. Pulido,* 674 S.W.2d 382 (Tex.App.—Corpus Christi 1984, no writ); *Texas Steel Co. v. Douglas,* 533 S.W.2d 111, 113–14 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.); 3 McDonald *Texas Civil Practice,* sec. 11.26 (rev. 1983). When the appellants failed to reurge their motion for instructed verdict at the conclusion of all the evidence, the motion was waived. *Hydro Line Mfg. Co. v. Pulido,* 674 S.W.2d at 386; *Montgomery Ward & Co. v. Garza,*

660 S.W.2d 619, 621 (Tex.App.—Corpus Christi 1983, no writ); *Texas Steel Co. v. Douglas, supra,* at 114.

The fifth point of error is overruled.

Point of error six asserts that there was no evidence of presentment for attorney's fees as required by Tex.Rev.Civ.Stat.Ann. art. 2226.

The demand letter is not reflected in the transcript, and no issue concerning presentment of the claim for attorney's fees was submitted to the jury. However, an issue regarding the amount of attorney's fees was submitted to the jury. Appellants did not object to the court's failure to submit an issue relating to the presentment of appellees' claim for attorney's fees. The omitted issue relating to presentment of attorney's fees is deemed to be resolved in favor of supporting the award. *Atkin v. Cobb,* 663 S.W.2d 48, 53 (Tex.App.—San Antonio 1983, writ dism'd w.o.j.); Tex.R.Civ.P. 279.

The sixth point of error is overruled and the trial court's judgment is affirmed.