**HYDRO–LINE MANUFACTURING CO., Appellant,**

v.

**Manuel Alcocer PULIDO, Appellee.**

**No. 13–83–388–CV.**

Court of Appeals of Texas, Corpus Christi.

May 24, 1984.

Rehearing Denied June 21, 1984.

B.R. Dossett, Harlingen, for appellant.

Richard Arroyo, Brownsville, for appellee.

Before KENNEDY, BISSETT and GONZALEZ, JJ.

## OPINION

KENNEDY, Justice.

This suit arises from an alleged breach of contract, a joint venture agreement. Defendant/appellant, Hydro-Line, a manu-

facturer of hydraulic and pneumatic cylinders, joint ventured with plaintiff/appellee, Alcocer.[1]

## STATEMENT OF FACTS

The relationship began on May 17, 1982. Prior to May 17th, Alcocer worked for the Mexico City firm Hydro-Tec, a joint venture of which Hydro-Line was a member. In the spring of 1982, Hydro-Tec was dissolved. Hydro-Line began exploring various alternatives for selling hydraulic cylinders in Mexico. The options explored included the possibility of forming a joint venture with Alcocer to be located in Mexico City. Ultimately, Hydro-Line decided to establish a plant in Brownsville, Texas. Hydro-Line hired Alcocer as Director of Operations of the Brownsville plant on May 17, 1982. A letter dated May 17, 1982, confirmed Alcocer's employment.

Thereafter, Alcocer assumed the duties of Director of Operations and began establishing the Brownsville operation. Hydro-Line paid Alcocer over $12,600 in temporary living and moving expenses. Hydro-Line obtained a L–1 visa for Alcocer and his family on July 8th.

On July 27, 1982, Hydro-Line and Alcocer executed a joint venture agreement creating a corporation under the laws of Mexico, Hidro-Line de Mexico. In summary, the terms of the agreement were:

1. Hydro-Line will assume the financial risks of the venture.
2. Alcocer would own all of the shares which would be Mexican type "A."
3. Alcocer is to put no capital into the venture; Hydro-Line is to receive all of the dividends; non-operational disbursements in excess of $500.00 to be approved by Hydro-Line; all income in excess of operating capital to be transferred to Hydro-Line daily.
4. Parties agree to use best efforts.
5. Hydro-Line will supply additional capital as needed.

6. The parties will act in good faith.
7. Dissolution can be made on 90 days notice by either party; Alcocer will relinquish all ownership and sign over shares to Hydro-Line's designee; *Hydro-Line guarantees Alcocer employment through January 1986.*
8. Amendments can be made with written approval of both parties.

Alcocer requested the inclusion of the italicized provision in the joint venture agreement. The joint venture agreement did not guarantee any particular position or salary.

On July 23, 1983, Hydro-Line agreed to loan Alcocer $85,000 to purchase a house in Brownsville, Texas. The loan was evidenced by a note. Alcocer admits that he owes the money to Hydro-Line and will have to repay it. Alcocer borrowed an additional $58,000 from International Bank. Alcocer brought his family to Texas on August 15th.

Soon afterward, the Mexican market failed, causing Hydro-Line to curtail operations and lay off employees at the Brownsville plant. On or about September 15th, Hydro-Line made Alcocer a Regional Sales Representative at the same salary he had been receiving as Director of Operations. Later, Hydro-Line instituted a company-wide salary reduction of five percent for all personnel, including Alcocer. Hydro-Line closed the Brownsville plant on October 15th, but retained Alcocer as its only employee in Brownsville.

After closing the Brownsville plant, Hydro-Line entered into negotiations with Raisa, Inc. (hereinafter referred to as Raisa), an established manufacturer of hydraulic and pneumatic cylinders located in Monterrey, Mexico. Alcocer attended some of the meetings with the Raisa people and examined the facilities. Rather than form a new joint venture, Hydro-Line decided to substitute Raisa for Alcocer as the joint venturer. Prior to December 9, 1982, Hydro-Line asked Alcocer to sign the necessary papers to transfer the joint venture.

---

**1.** Although the style of the case shows appellee's last name to be Pulido, the appellee in fact uses Alcocer.

Hydro-Line decided to eliminate the Regional Sales Representative positions company-wide and have sales agents on a commission basis. At a meeting held on December 9, 1982, Hydro-Line informed Alcocer that he would become a "Field Sales Representative Commission Agent" and that his commission would be a five percent commission of all sales in Mexico. The details of the new position were outlined in a letter given to Alcocer at the meeting. Alcocer signed over the joint venture to Raisa.

Alcocer objected to being changed from a salaried to commission basis. When requested to turn over the company automobile in his possession, Alcocer refused. Alcocer had an attorney send a letter to Hydro-Line advising that Alcocer was entitled to a salary of $38,000 per year through January, 1986, and that Hydro-Line had breached its contract with Alcocer. Alcocer's letter prompted a reply from Hydro-Line. It was Hydro-Line's position that it had in good faith attempted to comply with the guarantee of employment and that Alcocer had rejected the job offer. Hydro-Line also sent a letter to International Bank, stating that, Hydro-Line had guaranteed his note to the Bank, they would no longer guarantee said note.

At a meeting held on January 18, 1983, Hydro-Line offered to continue to pay Alcocer a monthly salary through July 1, 1983, at which time Alcocer would go on a commission basis; this offer was made to respond to Alcocer's concern about being immediately put on a commission basis. Hydro-Line also proposed that Alcocer sign a new note, changing the terms of repayment and granting a second lien on Alcocer's house. Alcocer rejected the January 18th offer. He initiated this litigation and obtained a temporary injunction against Hydro-Line. Hydro-Line counterclaimed for the company automobile in Alcocer's pos-

session and to collect the $85,000 loaned to him.

## THE JURY FINDINGS

The jury found (1) that the term of the employment agreement between appellant and appellee was 3.712 years; (2) that appellant guaranteed employment to appellee through January, 1986; (3) but that a specific yearly salary and fringe benefits were not guaranteed to appellant; (5) that the yearly salary and fringe benefits to be paid to appellee through January, 1986 was $50,465.00; (6) that appellant breached its employment agreement with appellee; (7) that appellee did not refuse a reasonable job assignment with appellant; (8) that $95,000 would compensate appellant for the damages resulting from the breach; and that (9) and (11) appellee did not act with malice.

The judgment awarded $95,000 to Alcocer and required Alcocer to return the automobile in his possession. From this judgment, Hydro-Line appeals.

## WAIVER

Appellant's points of error thirty through thirty-five in which appellant complains of the action of the trial court regarding the note from Alcocer to Hydro-Line, severed in appellant's Motion for Severance of the counterclaim for $85,000, have been waived by appellant's failure to present an adequate record for appeal.

Frankly, we are at a loss to understand what is being complained of. The thrust of appellant's argument in their brief is that they should have received judgment for the amount of appellee's note to them ($85,000.00). However, what record we have before us indicates that appellant moved for, and was granted, a severance of the claim.[2] In any event, the

---

2. THE COURT: All right. I'll grant the motion to sever and receive the counterclaim on the foreclosure, to be redocketed under a different cause number.

MR. ARROYO: Judge, as I understand it, there's a qualification with that. If the case

goes on appeal, we're not going to be able to foreclose in the meantime.

THE COURT: I'll just continue the temporary injunction. If you are successful with the—in your case I'll just presume they're going to be

burden is on the appellant to see, before submission of the case, that a sufficient record is presented on appeal which preserves the error upon which he relies. *Irrigation Construction Co. v. Motheral Contractors, Inc.,* 599 S.W.2d 336 (Tex.Civ. App.—Corpus Christi 1980, no writ); *Carson v. Estate of Carson,* 601 S.W.2d 171 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); TEX.R.CIV.P. 413. The motion for severance of appellant's counterclaim for the $85,000 note is not included in the transcript. In the judgment it is recited that appellant requested the severance. The few lines in the statement of facts in which the court granted this motion are not a sufficient record to preserve error. Appellant's points of error thirty through thirty-five are overruled.

Appellant's points of error two, five, twenty-five, thirty, thirty-one, thirty-two and thirty-three allege error by the failure of the trial court to grant appellant's motion for instructed verdict.

"The law is well settled that a defendant by electing not to stand on his motion for an instructed verdict made after the plaintiff has introduced its evidence and rested its case, and by proceeding with the introduction of its own evidence, waives his motion for instructed verdict unless the motion is reurged at the close of his case. *Wenk v. City National Bank,* 613 S.W.2d 345, 348 (Tex.Civ.App. —Tyler 1981, no writ).

■ Appellant therefore has waived its Motions for Instructed Verdict by failing to reurge the motions at the close of its case. *See Montgomery Ward & Co. v. Garza,* 660 S.W.2d 619 (Tex.App.—Corpus Christi 1983, no writ); *Shoppers World v. Villarreal,* 518 S.W.2d 913, 918 (Tex.Civ.App.— Corpus Christi 1975, writ ref'd n.r.e.). Appellant's points of error two, five, twenty-five, thirty, thirty-one, thirty-two and thirty-three are overruled.

Appellant has also waived its points of error seven, nine, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, twenty, twenty-one, twenty-two, twenty-three, twenty-four, twenty-six, twenty-seven, twenty-eight and twenty-nine on the basis of TEX.R.CIV.P. 418(e):

A brief shall contain such discussion of the facts and the authorities relied upon as may be requisite and to maintain the point at issue.

Points of error not supported by arguments and authorities are waived. *Leckey v. Warren* 635 S.W.2d 752 (Tex.App. —Corpus Christi 1982, no writ).

*Lemos v. Montez,* 659 S.W.2d 145 (Tex. App.—Corpus Christi 1983, writ requested).

Appellant's points of error seven, nine, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, twenty, twenty-one, twenty-two, twenty-three, twenty-four, twenty-six, twenty-seven, twenty-eight and twenty-nine are overruled.

## CONSTRUCTION OF THE CONTRACT

Appellant's points of error numbers one, three, four, six and eight which all relate to the construction of the contract will be discussed together.

Appellant complains that the trial court erred in failing to rule as a matter of law that the employment contract of May 17th was terminable at will; that the trial court erred in failing to rule that the May 17th agreement and the July 27th agreement were separate, distinct and independent contracts and that the trial court erred in submitting the interpretation of the contract to the jury because the contract was unambiguous.

■ Appellee contends that the two agreements must be read and construed together, relying on cases that hold that, where several instruments pertain to the same transaction, they will be read together, even though they do not expressly refer

---

successful all the way. That's the basis for enjoining the foreclosure.

If you're not successful, then we'll have to take another look at it. Is that the way you see it?

MR. JONES: Yes, sir. I think so.
THE COURT: That seems fair.
MR. JONES: Okay. Thank you.

to each other. *Board of Insurance Commissioners v. Great Southern Life Insurance Co.*, 150 Tex. 258, 239 S.W.2d 803 (1951). However, where the instruments are separate, distinct, and completely different, the first contract is not considered in construing the second. *Martin v. Davis Constructors, Inc.*, 552 S.W.2d 873 (Tex. Civ.App.—San Antonio 1972, writ ref'd n.r. e.).[3] As in *Martin* we find that the same result is reached whether we read the two documents together or consider them separately.

■ The July 27th joint venture agreement clearly guarantees appellee employment through January 1986, but omits the terms of the employment. If the documents are read together, then the May 17th letter supplies the omitted terms. On the other hand, if the documents are separate and distinct, a reasonable salary and other terms will be implied.[4] *Bendalin v. Delgado*, 406 S.W.2d 897 (Tex.1966). The reasonable salary and other terms to be supplied is a question for the fact-finder. *See Bendalin*, 406 S.W.2d at 900 (wherein the court held that the jury's finding was not supported by the evidence). Because the jury found that appellant guaranteed employment to appellee through January 1986, that this contract has been breached, and found reasonable damages supported by the evidence and the pleadings, then the judgment is proper. Appellant's first,

third, fourth, sixth and eighth points of error are overruled.

## SUFFICIENCY OF THE EVIDENCE

Appellant's tenth and nineteenth points of error question the sufficiency of the evidence.

■ By its tenth and nineteenth points of error, appellant complains that the evidence was conclusive, and the submission of Special Issue number one and six was improper.[5] These complaints are a restatement of appellant's assertion that the construction of the document is a matter of law for the courts. As noted above, there was evidence in the form of the joint venture agreement, the L–1 visa form,[6] and testimony of the witnesses to support the submission of these issues. In addition, the pleadings for declaratory relief are sufficient to allow the jury to construe the documents in question and supply the missing terms without additional pleadings of ambiguity. *Anderson v. McRae*, 495 S.W.2d at 357–8. The issue is properly submitted to the jury when there are material facts which are controverted. *Burke Wiley, Inc. v. Lenderman*, 545 S.W.2d 226 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.). Appellant's tenth and nineteenth points of error are overruled.

---

3. *See also U.S. Life Title Co. of Dallas v. Andreen*, 644 S.W.2d 185, 190 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.). A pleading of ambiguity is not required for declaratory relief under TEX.REV.CIV.STAT.ANN. art. 2524–1 (Vernon 1965). *Anderson v. McRae*, 495 S.W.2d 351, 357–8 (Tex.Civ.App.—Texarkana 1973, no writ).

4. We are mindful of our recent opinion in *Gerdes v. Mustang Exploration Co.*, No. 82–386 (Tex.App.—Corpus Christi February 23, 1984, no writ) (not yet reported), wherein we refused to supply an omitted term. In that case, future negotiations were clearly contemplated, and the omitted term was "the essence of the *proposed* contract and not a detail to be supplied by the court." *Gerdes*, —— S.W.2d at ——. (emphasis added) In the case before us today, the essence of the contract was the joint venture agreement.

5. Special Issues Numbers One and Six were:

SPECIAL ISSUE NO. 1

From a preponderance of the evidence, what do you find was the term of the employment agreement entered into by the Plaintiff and the Defendant?

Answer in number of years or 'None'.

We, the Jury, answer:  3.712

SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that the Defendant breached its employment agreement with the Plaintiff?

Answer 'Yes' or 'No'.

We, the Jury, answer:  Yes

6. An L–1 visa is obtained by the employer. The visa requires the employer to specify how long the employee is to be in the United States.

Appellant's points of error numbers eleven and twelve object to the submission of Special Issue No. 5,[7] alleging that the issue improperly emphasizes appellee's theory of the case and that the issue comments on the weight of the evidence. In determining the validity of an objection to a charge on the grounds that it consisted of an improper comment on the weight of the evidence, we must examine the charge in its entirety. *Briseno v. Martin,* 561 S.W.2d 794 (Tex.1977); *Armes v. Campbell,* 603 S.W.2d 249 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.); TEX.R.CIV.P. 277.

In response to the instructions following Special Issue No. 3,[8] the jury omitted answering Special Issue No. 4 and went on to Special Issue No. 5 and found that the yearly salary and fringe benefits to be paid to appellee through January, 1986, was $50,465.00. The jury, by its answer to Special Issue No. 3, rejected appellee's theory that he had been guaranteed a salary of $38,000.00 per year and all fringe benefits to which he testified by his contract of employment with appellant. The jury's answer to Special Issue No. 5 was a finding that, because the contract was silent as to all the particulars of compensation, a reasonable compensation was contemplated by the parties. *Guardian Trust Company v. Bauereisen,* 132 Tex. 396, 121 S.W.2d 579 (1938). Appellant has cited this case for the proposition that in the absence of a term in a contract, the parties contemplated a reasonable term, and the duty of the jury is to supply such reasonable term.

Reading the charge in its entirety, we find that the jury could find the yearly salary to be paid to appellee, if and only if the jury had previously found that appellee had been guaranteed term of employment but not a guaranteed salary. The jury was properly asked to supply the omitted term. *See Crawford Chevrolet, Inc. v. McLarty,* 519 S.W.2d 656, 664–5 (Tex.Civ.App.—Amarillo 1975, no writ).

Even if the court were to find that the language of Special Issue No. 5 constituted an improper emphasis upon Alcocer's theory of the case or a comment upon the weight of the evidence such error should be held harmless. In order to reverse a judgment and order a new trial on the grounds of erroneous submission of special issues, the appellate court must find that the trial court's error amounted to such a denial of the rights of the appellant as was reasonably calculated to and probably did cause the rendition of an improper judgment. *Mutual Life Insurance Company of New York v. Steele,* 570 S.W.2d 213 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.).

Appellant's eleventh and twelfth points of error are overruled.

The judgment of the trial court is AFFIRMED.

BISSETT, J., not participating.

---

7. Special Issue No. 5 reads as follows:
   From a preponderance of the evidence what do you find was the yearly salary and fringe benefits to be paid to the Plaintiff for his employment through January, 1986? Answer in dollars and cents or none.

8. Special Issue No. 3 reads as follows:

Do you find from a preponderance of the evidence that Defendant guaranteed to the Plaintiff a yearly salary and fringe benefits through January, 1986?

\*   \*   \*   \*   \*   \*

Answer 'Yes' or 'No'.
The jury answered 'No'.