ACCEPTED
03-13-00025-CV
7797517
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/12/2015 12:00:46 PM
JEFFREY D. KYLE
CLERK

DARYL L. MOORE‡

**DARYL L. MOORE, P.C.**

1005 Heights Boulevard
Houston, Texas 77008
713.529.0048 Telephone
713.529.2498 Facsimile

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/12/2015 12:00:46 PM
JEFFREY D. KYLE
Clerk

November 12, 2015

Jeffrey D. Kyle, Clerk
Third Court of Appeals
209 West 14th Street, Room 101
Austin, Texas 78701

>       **RE: No. 03-13-00025-CV; *Jerry Scarbrough, et al. v. Helen Purser, et al.*; In the Third Court of Appeals, Austin, Texas.**

Dear Mr. Kyle:

This case was argued on October 22, 2015, before Chief Justice Rose and Justices Field and Bourland. This post-submission letter brief addresses questions the justices asked of both parties' counsel during argument. Thus, please distribute this letter brief to the panel for the justices' consideration.

1.      Mental-anguish damages.

Chief Justice Rose asked appellees' counsel, Mr. Moore, whether the damages for mental anguish were segregated from the damages for the death of Mr. Purser. In response, Mr. Moore: (1) referred the Court to Elizabeth Tipton's testimony, which distinguished the family's mental anguish that followed the death of Mr. Purser from the mental anguish that resulted from appellants' conduct; (2) explained that no Texas Court has required segregation in circumstances like these and that a plaintiff bears no burden of segregating damages; and (3) referred the Court to the jury instructions that accompanied the damage questions — which limited the jury's consideration to damages caused only by appellants' tortious conduct[1] — and stated that the law presumes the jury followed those instructions in awarding mental-anguish damages.

---

[1]      "What sum of money, if paid now in cash, would fairly and reasonably compensate any of the named persons for their injuries, if any, ***that were proximately caused by the [defamatory] statement(s)***?" CR9814 (emphasis added); "What sum of money, if paid now in cash, would fairly and reasonably compensate Helen Purser for her damages, if any, ***that resulted from such fraud***?" CR98181 (emphasis added).

---

‡BOARD CERTIFIED, CIVIL APPELLATE LAW, TEXAS BOARD OF LEGAL SPECIALIZATION

*See Turner, Collie & Braden, Inc. v. Brookhollow*, 642 S.W.2d 160, 167 (Tex.1982) (presumption jury follows court's instructions).

Moreover, appellants waived any complaint about whether the jury may have included damages for Mr. Purser's death in the mental-anguish award. Had appellants wanted the jury to segregate damages, or not to award any amount for Mr. Purser's death, appellants were required either to: (1) request a limiting instruction to accompany the damage question; or (2) at least object to the form of the damages question. *Cf. Thomas v. Callaway*, 251 S.W.2d 921, 926 (Tex.Civ.App.–San Antonio 1952, writ ref'd n.r.e.) (defendant has "duty to request proper issues and instructions" concerning mitigation of damages); *Burbage v. Burbage*, 447 S.W.3d 255-56 (Tex.2014) (a *Casteel*-type objection is required to complain about a broad-form damages submission mixing valid and invalid elements of damages) (referring to *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex.2000)).

Put simply, if appellants wanted to further instruct the jury to consider only those mental-anguish damages that resulted from appellants' tortious conduct and not to include any amount for those resulting from Mr. Purser's death, appellants should have objected to the charge and requested an additional instruction. *See, e.g., Latham v. Castillo*, 972 S.W.2d 66, 70 (Tex.1998) (discussing trial court's ability to further instruct jury to differentiate between mental-anguish damages that are recoverable from those that are not).

Appellants did neither. The Court should affirm the award of mental-anguish damages.

2.      Deaton's and Steele's publication of defamatory statements.

Justice Bourland asked Mr. Moore whether Deaton's and Steele's defamatory statements were published. Mr. Moore pointed to the evidence establishing that the women's defamatory statements, including their spurious accusation that the Pursers intended to institutionalize Mr. Purser, were published to Mr. Purser. That evidence of publication is undisputed as it included in the women's secret recording of their conversation with Mr. Purser. Under the charge given, publication to Mr. Purser, alone, is sufficient to support the jury's finding that Deaton and Steele published defamatory statements. *See* CR9813 (instruction in charge that the communication must have been to a person other than Helen, Sue, "Bubba," JoAnn, or Elizabeth).

3.   Scarbrough's proffered qualified-immunity instruction was improper; the trial court's refusal to submit it was neither error nor harmful.

In his Second Issue on appeal, Scarbrough complained that the trial court erred in denying his tendered instruction that "[a]ttorneys have qualified immunity from a suit arising from their discretionary duties in and out of the courtroom in good faith withing the scope of their legal representation of respected [sic] clients."

Justice Bourland asked Scarbrough's counsel, Ms. Chimene, whether the proffered instruction was consistent with *Cantey Hanger*[2], which allows qualified immunity from liability but not immunity from suit. Chief Justice Rose inquired of Ms. Chimene whether the form of Scarbrough's proffered instruction bears on the issue of the trial court's discretion in refusing the instruction.

The Court in *Cantey Hanger* recited the rule that attorneys may be immune from civil *liability* to non-clients for actions taken in connection with representing a client in litigation. 467 S.W.3d at 481. Scarbrough's requested instruction proposed that he was immune from suit — not liability — and was therefore not a correct statement of law under *Cantey Hanger*. Thus, the trial court did not abuse its discretion in refusing Scarbrough's proposed misstatement of the law. *See Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 220 (Tex.App.–Austin 2013, no pet.) (holding that because proposed jury instruction misstated the law, the trial court did not abuse its discretion in refusing to submit it to the jury).

Additionally, as Mr. Moore stated during argument, under this Court's holding in *McGregor v. Vela*,[3] the jury's malice finding renders Scarbrough's charge-error complaint harmless. Or, as this Court stated: "[t]he evidentiary support for the finding of actual malice renders harmless any error in the court's refusal to submit an instruction and charge on qualified privilege." 2002 WL 220072 at *5.

4.   Scarbrough is not entitled to immunity for his defamatory statements and he admitted as much under cross-examination.

During appellants' rebuttal, Justice Bourland asked Ms. Chimene if an attorney-client relationship was required for immunity to apply. That question

---

[2] *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex.2015).

[3] No. 03-01-00299-CV, 2002 WL 220072 (Tex.App.–Austin 2002, no pet.) (Not designated for publication).

acknowledges that an attorney without a client cannot behave as Scarbrough behaved here and then claim immunity for his conduct.

It is undisputed that Scarbrough was not acting as an attorney for himself, for Deaton, or for Steele when he called Mr. Purser's niece, Carolyn Purser Bolling; falsely told her he represented Mr. Purser; disclosed Mr. Purser's medical records in violation of the trial court's Confidentiality Order; and, told Ms. Bolling that Mr. Purser had been harmed, abused, and ultimately killed by his wife and children. RR7:46-47, 51 (referring to Scarbrough's recorded conversation with Ms. Bolling); PX233 (the recorded conversation).

When Scarbrough made those false and defamatory statements to Ms. Bolling in November 2011, he no longer represented Steele,CR1886; he had withdrawn from representing Deaton, CR3297; and, Steven Barkley had entered an appearance on behalf of Scarbrough. CR3497. Thus, when Scarbrough defamed appellees, he was not acting as an attorney on behalf of a client, but only on his own, *personal* behalf.

Finally, the Court need look no further than Scarbrough's own testimony to reject his immunity defense. 3dSuppRR:JS48 (acknowledging that a licensed attorney cannot make statements in a court of law that are false, and that the attorney does not believe to be true when he makes them).

Scarbrough has no immunity for his false accusations of murder and abuse against the Purser family.

5. <u>*Schlueter* does not preclude a cause of action against a third party for fraud on the community.</u>

Chief Justice Rose inquired of Mr. Moore whether any claim of infidelity would give rise to a claim for fraud. In response, Mr. Moore responded that, while there is no cause of action for fraud against a third party for infidelity, Texas law does recognize claims against third parties who commit fraud on the community, citing *Schlueter*[4] as support.

In *Schlueter*, the jury found that the husband and his father committed actual and constructive fraud in dealing with community assets, that they fraudulently

---

[4] *Schlueter v. Schlueter*, 975 S.W.2d 584 (Tex.1998).

transferred assets between them, and that they conspired to injure the wife. 975 S.W.2d at 587.

The court in *Schlueter* did not reach the issue of whether the fraud causes of action against the father-in-law, as a third-party defendant, should be abolished. *Id.* at 590. Following its decision in *Schlueter*, the court in *Chu v. Hong* then announced that, as a general matter, torts "clearly can" be alleged against third parties. 249 S.W.3d 441, 445 (Tex.2008). Thus, *Schlueter* and *Chu* demonstrate that a spouse may sue a third party who commits fraud on the community.

For these reasons, and for the reasons stated in Appellees' Brief and during argument, the Court should affirm the trial court's judgment.

Very truly yours,

/s/ *Daryl Moore*

Daryl L. Moore,
*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

Relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this letter brief, excluding the contents listed in TRAP Rule 9.4(i), is **1,414**.

This post-submission letter brief complies with the typeface requirements of TRAP Rule 9.4(e) because it uses a conventional typeface no smaller than 14-point (WordPerfect X6 14-point Times New Roman).

/s/ Daryl L. Moore
Daryl L. Moore

## CERTIFICATE OF SERVICE

On November 12, 2015, I sent a true and correct copy of this Post-Submission Letter Brief via **E-service** to the following:

Michele Barber Chimene
THE CHIMENE LAW FIRM
2827 Linkwood Dr.
Houston, Texas 77025-3809
*michelec@airmail.net*

***Attorneys for Appellants,***
***Jerry Scarbrough, Melissa Deaton,***
***and Denise Steele***

/s/ Daryl L. Moore
Daryl L. Moore

---

‡BOARD CERTIFIED, CIVIL APPELLATE LAW, TEXAS BOARD OF LEGAL SPECIALIZATION